## IN THE MATTER OF PROBATE OF THE WILL OF NALIMU NAOIWI (w), deceased.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 16, 1902.    DECIDED FEBRUARY 15, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In a controversy over the probate of an alleged will, the verdict of a jury in favor of the contestants, being supported by the evidence, is affirmed.

OPINION OF THE COURT BY GALBRAITH, J.

The appellants, beneficiaries under the alleged will of Nalimu Naoiwi, deceased, made application to a Judge of the First Circuit Court for the probate of said will. This petition was resisted by the heirs at law of the deceased on two grounds: (1)

that the will was not executed or published according to law; (2) that the will was obtained by undue influence exercised upon the testatrix and was null and void.

After a hearing the Circuit Judge denied the prayer of the petition and refused to permit the will to be probated. An appeal was taken to the Circuit Court and a jury trial was demanded and allowed. The jury returned a verdict for the contestants to which judgment the proponents excepted as being contrary to the law and the evidence and the weight of the evidence.

It is contended in this court that the verdict of the jury is entirely unsupported by the evidence and for that reason should be set aside and a new trial ordered.

The evidence is not satisfactory and cannot be said to support any theory of the controversy with unanimity. The star witness for proponents on the second trial confessed that he committed wilful perjury on the first but seeks to excuse himself by the statement that Naoiwi, one of the proponents and late husband of the testatrix, induced him to swear falsely. Naoiwi, thus accused of subordination of perjury, makes no denial before the jury. The evidence further shows that this self confessed perjurer, one of the witnesses to the will, copied the will from one prepared or at least furnished him by Naoiwi. The evidence on pages 46 and 47 of the record of the first trial, introduced before the jury, shows the pitiable condition of the testatrix, her mental and physical suffering at the time of the execution of the will. The cross-examination of the witness, Punikala, vividly portrayed to the jury the scene at the execution of the will as follows: "A. No; you could not let her go after you had got her up into a sitting position; you would have to hold her.

"Q. Who was holding her when she signed the will? A. She was laying on her side; when this paper was brought in front of her she signed her name to it.

"Mr. Magoon: Sort of reclining; not lying down? A. Yes reclining.

"Mr. Kinney: Did any one ask her to sign the will? A. Naoiwi said to her write her name.

"Q. What answer did she make? A. She wrote her name down.

"Q. Who read the will to her? A. Naoiwi did.

"Q. Not Kanalu? A. No.

"Q. What did she say if anything when the will was read, did she say it was good or bad, or what? A. Naoiwi read the will to her. He read it about half way and he stopped and asked her, he said to her, how is this, is it right? He asked her twice and then she answered, leave that paper alone until by and by, leave that paper. And then Naoiwi kept on and read the balance. And he read it over twice and then asked her to put her name to it.

"Q. What answer did Naoiwi make when she said leave that paper until by and by? A. He made no reply.

"Q. What did he do? A. Naoiwi didn't put the paper away, he kept on reading it.

\* \* \* \* \* \* \* \*

"A. All I know is this, that Naoiwi read the will over to her until it got to where this money and land was and he stopped and asked her whether it was all right or not; she made no reply and he asked her again, and then she said, leave that paper; put that paper away, and Naoiwi kept on reading."

This testimony might have raised a doubt in the minds of the jury, if it did not produce absolute conviction that the will offered for probate was not the free and voluntary act of the testatrix. Taken in connection with the other evidence showing the weak and debilitated condition of the testatrix in body and mind; that she died four days after signing the will; the fact that Naoiwi caused the will to be copied from his own handwriting to that of Kanalu's; that he induced Kanalu to swear falsely at the first hearing and that he was fifty-six years of age and the testatrix was seventy when the brief and romantic courtship ended in marriage, all of these facts would tend to show that the will presented was procured by undue influence.

We conclude that there is sufficient evidence to support the verdict of the jury. The trial court fully covered the law of the case in its lucid and concise charge to the jury. The questions

of fact were submitted to the jury and determined against the proponents. This determination is final. In fact it is by no means clear that another jury would not render a similar verdict.

Exceptions overruled.

*J. A. Magoon* and *T. I. Dillon* for proponents.

*Kinney, Ballou & McClanahan* for contestants.

### CONCURRING OPINION OF PERRY, J.

The case for the contestants was, it seems to me, a weak one. Nevertheless there was evidence before the jury sufficient to sustain a finding that the will was not the free and voluntary act of the testatrix and that it was procured by undue influence. The verdict cannot under the circumstances be disturbed. The responsibility for the finding of fact is upon the jury. I concur in the conclusion that the exceptions must be overruled.